UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT


Robert Donald Marshall,    :
Jr. and Angel Maria        :
Marshall,                  :
        Plaintiffs,        :
                           :
    V.                     :    Case No. 2:13-cv-224-wks
                           :
Brita Hanson, Michelle     :
Kainen, Brenda Pellerine,  :
Cindy Kurahara, Mariam     :
Newman, Dr. William        :
Halikias, Mary Ann Neill,  :
Jeffrey Carlstrom,         :
Jennifer Foster, Janet     :
Melke, Carla Tucker,       :
Ruth Clough, and Sue       :
Lohutko,                   :
                           :
        Defendants.        :


OPINION AND ORDER
(Docs. 42, 43, 46, 48, 49, 51, 53, 62, 64,
65, 66, 67, 68, 69, 70, 72, 73, 75, 76, 77)

Plaintiffs Robert Donald Marshall, Jr. and Angel Maria

Marshall (collectively, "the Marshalls"), proceeding *pro se*,

bring this civil rights action against Defendants Brita

Hanson, Michelle Kainen, Brenda Pellerine, Mariam Newman,

Dr. William Halikias, Mary Ann Neill, Jeffrey Carlstrom,

Jennifer Foster, Janet Melke, Carla Tucker, Ruth Clough, and

Sue Lohutko.  The Marshalls allege that Defendants conspired

with the Vermont Department for Children and Families
("DCF") to terminate Ms. Marshall's parental rights, in
violation of Ms. Marshall's constitutional rights.  Now
pending before the Court are numerous motions filed by the
parties, including Defendants' motions to dismiss, the
Marshalls' motion to appoint counsel, and the Marshalls'
motions for preliminary injunctive relief.

<u>Factual and Procedural Background</u>

As set forth in greater detail in this Court's February
5, 2014 Opinion and Order (Doc. 31), the Marshalls allege
DCF[1] and its employees conspired with others to pursue child
abuse and neglect substantiations against them and
improperly petitioned to remove Ms. Marshall's three
children, B.S., R.M., and D.W.,[2] from her care.  The
proceedings culminated in the termination of Ms. Marshall's
parental rights.  The Marshalls initially brought suit only
against DCF (Doc. 6.)  The Court granted DCF's Motion to

---

[1] DCF is a department of the State of Vermont Agency of Human
Services authorized to investigate complaints of child abuse and
neglect and to supervise and control children committed to its
care. <u>See</u> 33 V.S.A. § 4903 (child welfare services authorizing
statute).

[2] The Court will refer to the children using their initials
to protect their identities.  The children's full names are not
relevant to the pending motions.

Dismiss on Eleventh Amendment sovereign immunity and Rooker-Feldman grounds and also granted the Marshalls leave to file an Amended Complaint (Doc. 31.)

The Marshalls' Amended Complaint (Doc. 32) alludes to many of the facts detailed in the original Complaint, but does not provide a chronology of events. A review of Vermont cases indicates that on March 7, 2013, the Vermont Superior Court entered an order terminating Ms. Marshall's parental rights. In re B.S., Docket No. 4/5/6-1/10 Wrjv (Vt. Super. Ct. Fam. Div. Mar. 7, 2013). Ms. Marshall appealed the decision to the Vermont Supreme Court, which affirmed the Vermont Superior Court on July 11, 2013. In re B.S., No. 2013-136, 2013 WL 3491176 at *3 (Vt. July 11, 2013) (unpublished entry order).

The Vermont Supreme Court found that, "the children were taken into the custody of [DCF] after they reported being physically abused by [Mr. Marshall]. . . At the time, the family was also struggling with homelessness and the children were not regularly attending school." Id. at *1. The Vermont Supreme Court recited the lower court's findings, made at the conclusion of the four-day termination hearing, that Ms. Marshall "frequently provided

contradictory information to the DCF caseworker about [Mr. Marshall]" and "provided sworn testimony in support of a relief from abuse order that [Mr. Marshall] physically and verbally abused the children." Id. Ultimately, the Vermont Supreme Court concluded that the lower court acted within its discretion to terminate Ms. Marshall's parental rights where it found that she placed her children at "significant risk" by exposing them "to men whom her children repeatedly accused of physical and/or sexual abuse." Id. at *3.

DCF also brought a parallel action against Mr. Marshall to terminate his parental rights with respect to R.M., Mr. Marshall's biological child with Ms. Marshall. In re R.M., No. 5-1-10 Wrjv (Vt. Super. Ct. Fam. Div. May 14, 2013); appeal dismissed, 72 A.3d 928, 194 Vt. 654 (Vt. Aug. 14, 2013) (unpublished entry order).

The State of Vermont appointed Defendant Michelle Kainen to represent Ms. Marshall in the termination proceedings, and the matter was heard by Judge Katharine Hayes in a contested hearing (Doc. 32 at 3.) Defendant Mary Ann Neil served as the Assistant Attorney General representing the State, and Defendant Attorney Ruth Clough served as attorney for the children (Doc. 32 at 4.)

Defendant Brita Hanson served as a guardian ad litem for the children. Id. Defendants Carla Tucker, Brenda Pellerine, Sue Lohutko, Jennifer Foster, and Janet Melke were DCF caseworkers involved in the case, some of whom testified during the termination proceedings. Id. Defendant Jeffrey Carlstrom, another caseworker, testified about alleged sexual abuse involving the children. Id. at 8. Defendant Dr. William Halikias met with the family once at the DCF office in Springfield, Vermont, prepared a family forensic report, and served as an expert witness. Id. at 10, 20, 21.

The Marshalls allege violations of Ms. Marshall's Fourteenth Amendment rights to substantive and procedural due process, conspiracy to deprive civil rights, obstruction of justice, evidence tampering, and perjury. Id. at 2-3. The Marshalls also make several Sixth Amendment claims: (1) Ms. Marshall did not receive effective assistance of counsel; (2) she was not allowed to offer any evidence or put on witnesses in her favor; (3) she was not permitted to depose witnesses or to obtain other documents in discovery; (4) the attorneys and caseworkers participating in the proceedings were biased against Ms. Marshall as a result of their involvement in related state court proceedings; (5)

Ms. Marshall was denied a change of venue; (6) Ms. Marshall was not permitted to undergo an independent psychological evaluation; and (7) Ms. Marshall was denied the opportunity to confront witnesses at trial or to compel witness testimony.

The Marshalls seek monetary damages in an amount of $1 million per defendant and have filed several motions seeking injunctive relief (Docs. 48, 64, 65, 67, 68, 73, 75, 76.) The Marshalls also have moved for the appointment of counsel (Doc. 77.)

Defendants have filed the following motions: Dr. Halikias's Motion for More Definite Statement (Doc. 42); Ms. Clough's Motion for a More Definite Statement (Doc. 43) and Motion to Dismiss for Failure to State a Claim (Doc. 53); Ms. Kainen's Motion to Dismiss for Failure to State a Claim (Doc. 46); and Motion to Dismiss for Failure to State a Claim filed by Mr. Carlstrom, Ms. Foster, Ms. Hanson, Ms. Melke, Ms. Neill, Ms. Pellerine, and Ms. Tucker ("State Defendendants") (Doc. 51.) Defendants Mariam Newman, Sue Lohutko, and Cindy Kurahara have not been served.

I.  <u>Plaintiffs' Motion to Appoint Counsel</u>

First, the Court considers the Marshalls' renewed
Motion to Appoint Counsel (Doc. 77.)  The Court denied the
Marshalls' initial Motion to Appoint Counsel (Doc.7) on
February 5, 2014 due to nature of the Marshalls' claims and
the lack of complexity that might otherwise warrant the
appointment of a pro bono attorney (Doc. 31.)

As the Court explained in greater detail in its
February 5, 2014 Opinion and Order, pro se parties do not
have a constitutional right to the assistance of counsel in
civil cases.  <u>See</u> <u>Leftridge v. Conn. State Trooper Officer</u>
<u>#1283</u>, 640 F.3d 62, 68 (2d Cir. 2011).  When evaluating
whether to appoint counsel for *in forma pauperis* litigants
in civil cases, the Court must consider whether the
indigent's claim "is likely one of substance."  <u>Carmona v.</u>
<u>United States Bureau of Prisons</u>, 243 F.3d 629, 632 (2d Cir.
2001) (citing *Hodge*, 802 F.2d at 61).  "[E]ven though a
claim may not be characterized as frivolous, counsel should
not be appointed in a case where the merits of the...claim
are thin and [the plaintiff's] chances of prevailing are
therefore poor."  <u>Id</u>. (denying request for counsel where

petitioner's appeal not frivolous but nevertheless appeared to have little merit).

The district court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact-finder, the indigent's ability to present the case, the complexity of the legal issues, and any special reason why appointment of counsel would be more likely to lead to a just determination.  <u>Hodge</u>, 802 F.2d at 61-62.

Here, the Marshalls argue that the appointment of counsel is necessary due an entirely different state court matter involving a different biological child of Mr. Marshall, who was placed in custody in the State of Massachusetts (Doc. 77 at 1.)  The Marshalls have not raised any argument relevant to the matter presently before this Court, and therefore there is no basis for altering the Court's initial conclusion with respect to the appointment of counsel.  As set forth in greater detail below, the Court does not find that the Marshalls claims are likely to be of substance at present, nor have the Marshalls argued any special circumstances relevant *to this case* to suggest the appointment of counsel would be more likely to lead to a

just determination.  Therefore, the Marshalls' Motion to Appoint Counsel (Doc. 77) is DENIED WITHOUT PREJUDICE.

II.  <u>Motion to Dismiss Standard of Review</u>

Defendants bring their motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Filings by self-represented parties are "to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (internal quotations marks and citations omitted).

Federal Rule of Civil Procedure 8(a) requires the plaintiff to provide "a short plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  On a motion to dismiss pursuant to Rule 12(b)(6), the court reviews the face of the plaintiff's complaint and accepts all factual allegations as true and draws all reasonable inferences in favor of the plaintiff. <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1174 (2d Cir. 1993).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not

akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

Even a facially-sufficient complaint may be properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The party asserting subject matter jurisdiction has the burden of proving, by a preponderance of the evidence, that the court has jurisdiction. Id.

Finally, a district court may dismiss a case filed in forma pauperis if the court determines that the complaint "is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A.   Dr. Halikias and Ms. Clough

Dr. Halikias and Ms. Clough each move for a more definite statement pursuant to Fed. R. Civ. P. 12(e),[3]

_____

[3] Under Rule 12(e), a party may move for a more definite statement where the complaint "is so vague or ambiguous that a party cannot

10

arguing that the allegations respectively naming each of them in the Amended Complaint are vague and unintelligible (Docs. 42, 43.)  Because both argue that the Amended Complaint does not provide sufficient notice of the acts or omissions constituting the wrongdoing alleged against them, the Court addresses both Motions together.

However, the Court also has inherent authority pursuant to 28 U.S.C. § 1915(e)(2)(B) to dismiss an *in forma pauperis* action *sua sponte* where the Court determines, in relevant part, that the plaintiff "fails to state a claim on which relief may be granted" or "seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(ii) and (iii); see also Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 363-64 (2d Cir. 2000) (district court may dismiss frivolous complaint *sua sponte* even where plaintiff paid filing fee); Pillay v. Immigration & Naturalization Serv., 45 F.3d 14, 17 (2d Cir. 1995) (court has "inherent authority" to dismiss petition that presents "no arguably meritorious issue").  Here, because the issues raised by Dr. Halikias and Ms. Clough

---

reasonably be required to frame a responsive pleading[.]"  Fed. R. Civ. P. 12(e).

suggest an absence of viable legal claims under the facts alleged, the Court invokes its § 1915(e)(2)(B) authority.

*Dr. Halikias*

The Amended Complaint alleges that Dr. Halikias prepared two "Family Forensic" evaluations on November 8, 2010 and February 25, 2012, respectively (Doc. 32 at 11.) The Court infers from allegations that Dr. Halikias also testified as an expert witness during the termination proceedings and provided his professional opinion based upon the reports he prepared. The Amended Complaint alleges that Dr. Halikias "testified to not knowing anything about Robert Donald Marshall Jr. other than assertions and allegations" and other portions of his testimony are summarized without reference to specific wrongdoing. Id. at 10, 20.

The Amended Complaint further alleges that Dr. Halikias only met with the family on one occasion prior to preparing his reports, that one of the children did not participate, and that Dr. Halikias was "bias[ed . . . due to a lack of culturally competent insight[.]" Id. at 20. The Amended Complaint alleges that "Dr.[]Halikias conducted Family Forensics against APA rules[.]" Id. at 10. Other references to Dr. Halikias in the Amended Complaint are in

the context of other defendants' conduct, such as DCF's failure to follow Dr. Halikias's recommendations.  See Id. at 20.

Witnesses who testify in judicial proceedings, such as Dr. Halikias, are entitled to absolute immunity for constitutional claims arising from their testimony.  See Wilkinson ex rel. Wilkinson v. Russell, 182 F.3d 89, 97 (2d Cir. 1999) (citing Briscoe v. LaHue, 460 U.S. 325, 335 (1983)).  Therefore, to the extent the Marshalls allege claims arising from Dr. Halikias's testimony, Dr. Halikias is absolutely immune and those claims are barred.

The Court cannot discern from the face of the Amended Complaint any other claims related to Dr. Halikias's alleged acts or omissions.  The Supreme Court has explained that a complaint must do more than create the inference of "the mere possibility of misconduct."  Iqbal, 556 U.S. at 679; see also Ostrer v. Aronwald, 567 F.2d 551, 553 (2d Cir. 1977) ("[C]omplaints containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights will be dismissed.").  The conclusory allegations against Dr. Halikias, such as allegations of "bias" or failure to comply with APA guidelines in preparing

his report, lack sufficient factual detail to allow the
Court to infer the existence of any plausible legal claims.
Therefore, all claims against Dr. Halikias are DISMISSED,
and his Motion for a More Definite Statement (Doc. 42) is
DENIED as moot.

*Ms. Clough*

As a preliminary matter, the Marshalls have filed a
pleading entitled, "In re: Strike Motion to Dismiss Ruth
Clough Document #53" (Doc. 62), which the Court construes as
memorandum in opposition to the pending Motion and not as a
request to have Ms. Clough's memorandum of law stricken from
the record.  The Marshalls' memorandum does not allege any
grounds for striking the memorandum, nor does Ms. Clough's
memorandum contain "redundant, immaterial, impertinent, or
scandalous matter" as required by Fed. R. Civ. P. 12(f).  To
the extent the Marshalls intended their memorandum to serve
as a motion to strike the document from the record, the
Motion to Strike (Doc. 62) is DENIED.

As to the allegations against Ms. Clough, the Amended
Complaint generally names Ms. Clough the attorney appointed
to represent the three children in the termination
proceedings and alleged she was a member of the "prosecution

team" who conspired to violate Ms. Marshall's Fourteenth
Amendment rights (Doc. 32 at 3, 5.)  The Amended Complaint
alleges that Ms. Clough had a current conflict of interest
while representing the children, because she was involved in
a case related to Mr. Marshall's daughter, C.M.  Id. at 4,
13.  Further, Ms. Clough did not attend any of Ms.
Marshall's visits with the children and refused to allow the
children to be called as witnesses.  Id. at 4, 16.

    With respect to the § 1983 conspiracy allegations, "a
plaintiff must show: (1) an agreement between two or more
state actors or between a state actor and a private entity;
(2) to act in concert to inflict an unconstitutional injury;
and (3) an overt act done in furtherance of that goal
causing damages."  Pangburn v. Culbertson, 200 F.3d 65, 72
(2d Cir. 1999).  Aside from the vague allegation that Ms.
Clough was a member of the "prosecution team," the Amended
Complaint does not allege any facts that would give rise to
the inference that an agreement existed between Ms. Clough
and a state actor to violate Ms. Marshall's constitutional
rights.  See also Ostrer, 567 F.2d at 553 (2d Cir. 1977)
("[C]omplaints containing only conclusory, vague, or general
allegations of conspiracy to deprive a person of

constitutional rights will be dismissed."). The Amended Complaint does not allege sufficient facts to state a § 1983 conspiracy claim against Ms. Clough.

As to the remaining allegations against Ms. Clough, all of these matters pertain to Ms. Clough's conduct while serving as the attorney for the children. As this Court previously explained in its February 5, 2014 Opinion and Order, "[o]nce parental rights are terminated, a parent lacks standing to bring claims on behalf of his or her children." Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs., 804 F. Supp. 2d 100, 104 (N.D.N.Y. 2011) (citing Lomnicki v. Cardinal McCloskey Servs., No. 04-CV-4548, 2007 WL 2176059, at *6 (S.D.N.Y. July 26, 2007)). A parent also lacks standing to bring a § 1983 claim "based solely upon a deprivation of a child's constitutional rights." Kaminski, 804 F. Supp. 2d at 104-05.

Therefore, because the Amended Complaint does not allege sufficient facts against Ms. Clough to state a § 1983 claim and the Marshalls lack standing to bring claims arising from Ms. Clough's conduct as the children's attorney, all claims against Ms. Clough are DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Ms. Clough also

has filed a Motion to Dismiss (Doc. 53), which is DENIED
WITHOUT PREJUDICE as moot.

      B.   Ms. Kainen

The Amended Complaint alleges that Ms. Kainen is liable
to Ms. Marshall for legal malpractice.  Ms. Kainen allegedly
violated her duty of care by failing to withdraw from the
matter despite a conflict of interest, ineffective
assistance of counsel, failing to object to the admission of
evidence or raise conflicts of interest, failing to
investigate, and failing to proffer certain testimony or
other evidence.  Ms. Kainen has filed a partial Motion to
Dismiss, moving to dismiss all claims that might pertain to
Mr. Marshall (Doc. 46.)  She does not move to dismiss the
claims pertaining to Ms. Marshall.  She argues that the
Amended Complaint does not allege that she represented Mr.
Marshall in the termination proceedings or otherwise engaged
in other conduct giving rise to a claim specific to him
(Doc. 46-1 at 1.)

Under Vermont law, the elements of a cause of action
for attorney negligence are: "(1) the existence of an
attorney-client relationship which establishes the duty of
case; (2) the negligence of that attorney measured by . . .

17

her failure to perform in accordance with established standards of skill and care; and (3) that the negligence was the proximate cause of harm to plaintiff." Hedges v. Durrance, 834 A.2d 1, 3 (Vt. 2003). With regard to the first element, "an attorney owes a duty of care only to the client, not to third parties [who] have been damaged by the attorney's negligent representation." Bovee v. Gravel, 811 A.2d 137, 139 (Vt. 2002) (citing Savings Bank v. Ward, 100 U.S. 195, 200 (1879)). As the Vermont Supreme Court explained in Bovee, this rule allows attorneys to zealously represent their clients "without the threat of suit from third parties compromising that representation." Id. at 140.

Here, the Amended Complaint affirmatively alleges that the state court appointed Ms. Kainen to represent Ms. Marshall in the termination proceedings (Doc. 32 at 4.) See also In re B.S., Docket No. 4/5/6-1/10 Wrjv (Vt. Super. Ct. Fam. Div. Mar. 7, 2013) and (Docs. 46-2, 46-3, and 46-4). Nowhere does the Amended Complaint allege that Ms. Kainen represented Mr. Marshall. The only allegations regarding Mr. Kainen that involve Mr. Marshall include Ms. Kainen's previous appointment as guardian ad litem for Mr. Marshall's

daughter, C.M., and that Ms. Kainen did not call Mr.
Marshall as a witness or investigate his prior convictions
for purposes of discrediting the allegations *against Ms.
Marshall* in the termination proceeding.  <u>See</u> Doc. 32 at 4,
13, 16.  Because the Amended Complaint does not allege any
facts to suggest that Ms. Kainen represented Mr. Marshall or
otherwise owed him a duty of care, and no duty of care is
owed to a third party under Vermont law, Mr. Marshall's
attorney malpractice claim against Ms. Kainen is DISMISSED.

To the extent the Amended Complaint might raise a §
1983 claim against Ms. Kainen, "it is well-established that
court-appointed attorneys performing a lawyer's traditional
functions as counsel to defendant do not act 'under color of
state law' and therefore are not subject to suit under 42
U.S.C. § 1983." <u>Rodriguez v. Weprin</u>, 116 F.3d 62, 65-66 (2d
Cir. 1997).  Therefore, Ms. Kainen's partial Motion to
Dismiss (Doc. 46) with respect to all of Mr. Marshall's
claims against her is GRANTED, and all claims against Ms.
Kainen raised by Mr. Marshall are DISMISSED.  The only
viable legal claims against Ms. Kainen that now remain are
Ms. Marshall's state law claims for legal malpractice.

    C.   State Defendants

State Defendants move to dismiss for failure to state a claim, arguing that each is entitled to some form of immunity that bars the Marshalls' claims against them. Alternately, State Defendants argue that the Marshalls claims are barred by the Rooker-Feldman doctrine and are vague and conclusory.

*Absolute Witness Immunity*

Witnesses who testify in judicial proceedings are entitled to absolute immunity for constitutional claims arising from their testimony.  See Wilkinson ex rel. Wilkinson v. Russell, 182 F.3d 89, 97 (2d Cir. 1999) (citing Briscoe v. LaHue, 460 U.S. 325, 335 (1983)).  Absolute immunity applies to § 1993 actions, "even if such testimony was perjured."  Coggins v. Nassau, 988 F. Supp. 2d 231, 244 (E.D.N.Y. 2013) (citing Briscoe, 460 U.S. at 335-36); see also Buchanan v. Ford, 638 F. Supp. 168, 171 (N.D.N.Y. 1986) (holding that child caseworker entitled to absolute immunity for claims related to testimony in family court). Accordingly, all claims against Mr. Carlstrom and Ms. Foster (Doc. 32 at 8, 19, 23) pertaining to testimony they allegedly gave during the termination proceedings detailed in the Amended Complaint are DISMISSED.

*Absolute Prosecutorial Immunity*

Absolute prosecutorial immunity bars official- and individual-capacity suits under § 1983 against "prosecutors performing prosecutorial activities 'intimately associated with the judicial phase of the criminal process'[.]" <u>Robison v. Via</u>, 821 F.2d 913, 918 (2d Cir. 1987) (quoting <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430 (1976)); <u>see also</u> <u>Shmueli v. City of New York</u>, 441 F.3d 231, 236 (2d Cir. 2005) (where functions performed by defendant official are clear on the face of the complaint, "the absolute immunity defense may be resolved as a matter of law on a motion to dismiss the complaint pursuant to Rule 12(b)(6)."). Absolute immunity also extends beyond criminal proceedings, "to other litigating activities of government attorneys, such as initiating and prosecuting child protection litigation." <u>Robison</u>, 821 F.2d at 918 (citing <u>Walden v. Wishengrad</u>, 745 F.2d 149, 152-53 (2d Cir. 1984)), <u>accord</u> <u>Cornejo v. Bell</u>, 592 F.3d 121 (2d Cir. 2010).

Absolute immunity only applies to "[a]ctions taken as an advocate[,]" such as initiating prosecution or presenting the case. <u>Zahrey v. Coffrey</u>, 221 F.3d 342, 343 (2d Cir. 2000). "[W]hen a prosecutor performs an investigative or

administrative function rather than a prosecutorial one, absolute immunity is not available[,]" nor is absolute immunity available where the attorney "undertakes conduct that is beyond the scope of his litigation-related duties." Barbera v. Smith, 836 F.2d 96, 99-100 (2d Cir. 1987).

Ms. Neil argues that she is entitled to absolute prosecutorial immunity for her conduct as an Assistant Attorney General representing the State of Vermont in the termination proceedings. The Court agrees. The Amended Complaint alleges that Ms. Neil was a member of the "prosecution team" (Doc. 32 at 3) in the termination proceeding and that she observed a jury draw and depositions of DCF workers as part of criminal proceedings against Mr. Marshall. Id. at 4. The Amended Complaint alleges that Ms. Neil had a conflict of interest (id. at 13) and nonetheless "moved forward" with the termination proceedings. Id at 13. All of these allegations describe actions taken within the scope of initiating, preparing for, and prosecuting the child custody termination proceedings involving the three children. Therefore, because Ms. Neil is entitled to absolute prosecutorial immunity, all claims against her are

DISMISSED.[4]

Ms. Foster, Ms. Melke, Ms. Tucker, and Ms. Pellerine, (hereinafter "DCF Caseworkers") argue that they also entitled to absolute immunity for their actions taken as child welfare caseworkers. They cite <u>Torres v. Howell</u>, No. 3:03 CV 2227 (MRK)(WIG), 2006 WL 1525942, at *13 (D. Ct. May, 30, 2006), for the general proposition that "DCF social workers have absolute immunity for their involvement in initiating and participating in judicial child custody proceedings."

However, <u>Torres</u> does not address the Second Circuit's more recent holding in <u>Cornejo</u>, which reversed the lower court's conclusion that child welfare caseworkers are entitled to the same absolute immunity that protects attorneys in state child protection matters. <u>See</u> <u>Cornejo</u>,

---

[4] To the extent the Amended Complaint might be construed as raising an action for malicious prosecution against Ms. Neil, and assuming such a cause of action exists in child protection matters, the Marshalls cannot show that the underlying action terminated in their favor. <u>See</u> <u>Anello v. Vinci</u>, 458 A.2d 1117, 1119-20 (Vt. 1983) (requiring that proceeding terminate in plaintiff's favor where plaintiff alleges criminal malicious prosecution); <u>see</u> <u>also</u> <u>Sundbye v. Ogunleye</u>, 3 F. Supp. 2d 254, 260 (E.D.N.Y. 1998) (dismissing claim for malicious prosecution under New York law where plaintiff alleged "unfounded" child abuse proceedings were initiated against here).

592 F.3d at 128.  Instead, where caseworkers perform what amounts to a "police function" they are instead entitled to qualified immunity.  Id.  Therefore, the Court concludes that the DCF caseworkers are not entitled to absolute immunity.

*Qualified Immunity*

Alternately, the DCF Caseworkers argue that they are entitled to qualified immunity.  Under the doctrine of qualified immunity, government employees are shielded from civil liability under § 1983 if either "(1) their conduct 'did not violate clearly established rights of which a reasonable person would have known,' or (2) 'it was objectively reasonable to believe that [their] acts did not violate these clearly established rights.'" Id. (citing Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998); see also Wilkinson, 182 F.3d at 97 (observing that qualified immunity standard under Vermont law is "nearly identical" to standard for federal law claims).  Generally, caseworkers are afforded "substantial protection" due to circumstances that often force them to "choose between difficult alternatives[.]" Id. (citing Tenenbaum v. Williams, 193 F.3d

581, 596 (2d Cir. 1999).

Nonetheless, typically "the defense of qualified immunity cannot support a grant of a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted." McKenna v. Wright, 386 F.3d 432, 435 (2d Cir. 2004) (quoting Green v. Maraio, 722 F.2d 1012, 1018 (2d Cir. 1983)). To prevail on a qualified immunity defense on a motion to dismiss, the defense must be "based on facts appearing on the face of the complaint." McKenna, 386 F.3d at 436. Here, the DCF Caseworkers have not cited any facts that would suggest a reasonable basis for their conduct. Instead, their argument relies upon inferences unfavorable to the Marshalls, which is contrary to the standard on a motion to dismiss. Therefore, the Court declines to dismiss the claims against the DCF Caseworkers on qualified immunity grounds.

### Rooker-Feldman Doctrine

The DCF Caseworkers also argue that the Rooker-Feldman doctrine bars the Marshalls' claims, because any finding of wrongdoing in this matter would undermine the state court's order concluding that the children were abused by Mr.

Marshall and neglected by Ms. Marshall (Doc. 51 at 10.)

Under the Rooker-Feldman doctrine, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005) (citing District of Columbia Ct. Of Appeals v. Feldman, 460 U.S. 462 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413, 414-15 (1923)). Rooker-Feldman applies where: (1) the federal court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites district court review and rejection of that judgment; and (4) the state court judgment was rendered before the district court proceedings were commenced. Hoblock, 422 F.3d at 85 (quoting Exxon Mobil v. Saudi Basic Indus. Corp., 544 U.S. 280, 285 (2005) (quotation marks and alterations omitted).

As this Court explained in its previous order, the Marshalls filed this lawsuit after the Vermont Supreme Court affirmed the unfavorable result against Ms. Marshall in an attempt to reopen the state court termination proceeding. The more challenging issues here are whether the Marshalls

complain of injuries caused by the state court judgment and whether the remedies they seek would require this Court to review and reject the state court judgment.

To the extent the Marshalls seek injunctive relief or argue that the DCF Caseworkers violated their procedural or substantive due process rights, Rooker-Feldman bars those claims. See id. at 87 ("if the state has taken custody of a child pursuant to a state judgment, the parent cannot escape *Rooker-Feldman* simply by alleging in federal court that he was injured by state employees who took his child rather than by the judgment authorizing them to take the child."); see also Phifer v. City of New York, 289 F.3d 49, 57 (2d Cir. 2002) (claims seeking order directing children's services to return child to plaintiff's custody barred by Rooker-Feldman doctrine).[5]

Instead, the Marshalls allege that Ms. Foster, Ms. Melke, Ms. Tucker, and Ms. Pellerine were "bias[ed] . . . due to their involvement in cases involving [Mr. Marshall],

_____

[5] The Marshalls do not allege that any of the DCF Caseworkers removed the children from the home without a court order, which might require a different result. See, e.g., Schwietzer v. Crofton, 935 F.Supp.2d 527, 541-42 (E.D.N.Y. 2013) (Rooker-Feldman doctrine does not apply to child custody claims where parents challenge emergency removal without a court order).

Karen Kopycinski, and CM in 2009[.]" (Doc. 32 at 4.) The
Amended Complaint also alleges Ms. Foster and Ms. Melke are
liable for "[t]ampering with evidence" because their
signatures appear on the child abuse substantiation intake
forms (Doc. 32 at 11.) The injuries alleged are matters
implicitly addressed by the state court when it ordered the
temporary removal of the children from the home and
ultimately terminated both parents' rights. See Kaminski v.
Comm'r of Oneida County Dept. of Soc. Servs., 804 F.Supp.2d
100, 106 (N.D.N.Y. 2011) (granting motion to dismiss on
Rooker-Feldman grounds); Johnson v. Myers, No. 10-cv-1964,
2014 WL 2744624, at *8 (E.D.N.Y. June 16, 2014) (holding
that determining whether caseworkers had reasonable basis to
investigate allegations of child neglect would require
review of state court decision contrary to Rooker-Feldman).
Therefore, the Court concludes that all claims against the
DCF Caseworkers are barred by the Rooker-Feldman doctrine.
All claims against Ms. Tucker, Ms. Melke, Ms. Foster, and
Ms. Pellerine are DISMISSED.

*Absolute Quasi-Judicial Immunity*

Ms. Hanson argues that she is entitled to absolute

quasi-judicial immunity for the functions she performed as
the children's court-appointed Guardian Ad Litem ("GAL")
(Doc. 51 at 13.)  The Amended Complaint alleges that she
opposed postponing the parental rights termination hearing
(Doc. 32 at 5) and belonged to the "prosecution team" which
violated Ms. Marshall's constitutional rights (id. at 4.)

Under the doctrine of absolute quasi-judicial immunity,
"non-judicial officers . . . must be assured complete
protection to the extent that they are fulfilling functions
'closely related to the judicial process." Wilkinson, 182
F.3d at 97 (citing Burns v. Reed, 500 U.S. 478, 494 (1991)).
Ms. Hanson argues that as a GAL appointed by the Family
Division, she was authorized to act in the best interests of
the children assigned to her by the Family Division. See
Vt. Stat. An. tit. 33 § 5112(b) (2012) (Family Division
"shall appoint a guardian ad litem for a child who is party
to a proceeding brought under the juvenile judicial
proceedings chapters."; V.R.F.P. 6 (providing that GAL
intended "to safeguard the ward's best interests and
rights.")

The Court agrees.  In the child protection context, "it

is well-established that guardians ad litem and 'law guardians' are protected by quasi-judicial immunity." Wilson v. Wilson-Polson, No. 09 Civ. 9810, 2010 WL 3733935, at *7 (S.D.N.Y. Sept. 23, 2010), aff'd, 446 Fed. App'x 330 (2d Cir. 2011) (holding that GAL may not be sued for actions in her capacity as GAL); see also Yapi v. Kondratyeva, 340 Fed. App'x 683, 685 (2d Cir. 2009); Lewittes v. Lobis, 164 Fed. App'x 97, 98 (2d Cir. 2006). Therefore, because Ms. Hanson is entitled to absolute quasi-judicial immunity for her conduct as GAL for the children, all claims against Ms. Hanson are DISMISSED.

D.   Motions to Amend Complaint

The Marshalls have filed several motions requesting leave to file a Second Amended Complaint (Docs. 49, 66, 72.) The Second Circuit has held that district courts should not dismiss *pro se* complaints without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002) (citing *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *see also* Fed. R. Civ. P. 15(a)(2)("the court should freely give leave when

justice so requires"). However, leave to amend is not required where it would be futile. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] causes of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.").

Here, the Court concludes that granting leave to amend would be futile with respect to the claims against State Defendants (Ms. Neil, Ms. Carlstrom, Ms. Foster, Ms. Tucker, Ms. Melke, Ms. Pellerine, and Ms. Hanson)because all claims against them are barred either on immunity grounds or under the Rooker-Feldman doctrine. Better pleading will not cure those deficiencies. Further, Dr. Halikias and Ms. Clough are also entitled to absolute immunity with respect to any claims arising from their testimony in the termination proceedings, and therefore granting leave to amend as to those claims is futile as well.

Nonetheless, with the exceptions described here, the Marshalls' motions for leave to file a Second Amended Complaint (Docs. 49, 66, 72) are GRANTED IN PART, DENIED IN PART. Although the Court has already granted the Marshalls

leave to file an amended complaint, the Court has not granted leave to amend with respect to the new parties named, and the Court does not conclude that granting leave to amend would be futile in all instances.

E. Remaining Motions

The Marshalls have filed additional motions to obtain injunctive relief related to the three children (Docs. 48, 64, 65, 67, 68, 73, 75, 76), to subpoena records (Doc. 69), and to request an order waiving fees for Early Neutral Evaluation (Doc. 70.)

With respect to the Motions for injunctive relief, DCF and all State Defendants are dismissed from the case. Accordingly, the Court cannot order relief on these motions, nor would an order granting such relief be permitted under the Rooker-Feldman doctrine. See Phifer, 289 F.3d at 57 (claims seeking order directing children's services to return child to plaintiff's custody barred by Rooker-Feldman doctrine). Therefore, the Marshalls' motions for injunctive relief (Docs. 48, 64, 65, 67, 68, 73, 75, 76) are DENIED.

The Marshalls' Motion for Subpoena of Records (Doc. 69) seeks records "relating to the termination of parental

rights trial as well as adoption proceedings" from DCF, Casey Family Services, Windsor County Family Court, Windham County Probate Court, Ms. Clough, Ms. Kainen, Ms. Neil, Attorney Mauren Martin, and the State's Attorney's Office (Doc. 69 at 1.) To the extent that Ms. Kainen and Ms. Clough remain parties in this case, a subpoena is not necessary, as the information sought may be requested through a document request under Fed. R. Civ. P. 34. Furthermore, a party generally need not file a motion in order to obtain a subpoena. See Fed. R. Civ. P. 45(a)(2). The Motion for Subpoena of Records (Doc. 69) is therefore DENIED.

The Motion to Waive ENE Fees (Doc. 70) is DENIED as premature, because not all of the parties have been served and made appearances.

CONCLUSION

For the reasons set forth above, Dr. Halikias's Motion for More Definite Statement (Doc. 42) and Ms. Clough's Motion for More Definite Statement (Doc. 43) are DENIED as moot, and all claims against Dr. Halikias and Ms. Clough are DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B). Ms.

Clough's Motion to Dismiss (Doc. 53) is DENIED as moot.  Ms.
Kainen's partial Motion to Dismiss for Failure to State a
Claim (Doc. 46) is GRANTED, and all claims against Ms.
Kainen pertaining to Mr. Marshall are DISMISSED.  State
Defendants' Motion to Dismiss for Failure to State a Claim
(Doc. 51) is GRANTED, and all claims against Mr. Carlstrom,
Ms. Foster, Ms. Hanson, Ms. Melke, Ms. Neil, Ms. Pellerine,
and Ms. Tucker are DISMISSED.

The Marshalls' Motion to Strike Doc. 59 (Doc. 62) and
Emergency Motion to Appoint Counsel (Doc. 77) are DENIED.
The Marshalls' Motion to Reopen Case (Doc. 48), Second
Motion to Stay Case (Doc. 64), Motion for Leave to Appear
(Doc. 65), Motion to Emergency Preliminary Injunction (Doc.
67), Motion for Injunction (Doc. 68), Motion to Conduct
Federal Investigation (Doc. 73), Motion for Civil Rights to
Be Restored without DCF Interference (Doc. 75), and Motion
for Adoption Revocation/Dissolution/Reversal (Doc. 76) are
DENIED.  The Marshalls' Motion for Subpoena of Records (Doc.
69) is DENIED, and the Motion Motion to Waive ENE Fees (Doc.
70) is DENIED as premature.

The Marshalls' motions for leave to file a Second

Amended Complaint (Docs. 49, 66, 72) are GRANTED IN PART, DENIED IN PART. The Marshalls shall file a Second Amended Complaint within thirty (30) days of the date of this Order. Any amended filing shall be entitled "Second Amended Complaint," and it must allege all claims and name all Defendants the Marshalls intend to include, as the Second Amended Complaint will supersede all other complaints in all respects. The Second Amended Complaint shall state its claims or defenses in numbered paragraphs, as provided in Fed. R. Civ. P. 10(b). Failure to file a Second Amended Complaint within thirty (30) days may result in final dismissal with prejudice of the claims dismissed herein. SO ORDERED.

Dated at Burlington, in the District of Vermont, this 27th of March, 2015.

/s/ William K. Sessions III
William K. Sessions III
Judge, United States District Court